1

2

3

4

5

6

7

8               # UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| DELLA DIAZ, | ) | 1:09-cv-0927 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

18

19                        **BACKGROUND**

20          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21  "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI")

22  pursuant to Title XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is

23  currently before the Court on the parties' briefs, which were submitted, without oral argument, to the

24  Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

25

26

27          [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 9, 10.)  On April 7,
    2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ.
28  P. 73; *see also* L.R. 301, 305.

1

## FACTUAL BACKGROUND

2      Plaintiff was born in 1964, has either a ninth or tenth grade education, and has no past

3 relevant work.  (Administrative Record ("AR") 112, 122, 174, 574.)

4      On March 28, 2003, Plaintiff filed an application for SSI, alleging disability beginning

5 January 30, 1991, due to thyroid dysfunction, diabetes, and back pain.  (AR 31, 157-60.)  Following

6 the Commissioner's denial of her application initially and on reconsideration, Administrative Law

7 Judge ("ALJ") Patricia Flierl held a hearing at Plaintiff's request on January 5, 2005, and issued a

8 decision on January 18, 2005, finding Plaintiff not disabled.  (AR 28-36, 52-108.)  ALJ Flierl found

9 that Plaintiff had the residual functional capacity ("RFC") to occasionally lift up to 20 pounds,

10 frequently lift and carry up to 10 pounds, and sit, stand, or walk for six hours in an eight-hour day.[2]

11 (AR 35.)  ALJ Flierl also found that Plaintiff did not have any significant non-exertional limitations.

12 (AR 35.)  The Appeals Council denied review on July 15, 2005, and Plaintiff did not further appeal.

13 (AR 23-25.)

14      On April 11, 2005, Plaintiff filed a new application for SSI, alleging disability beginning

15 March 28, 2002, due to thyroid removal, diabetes, back problems, low blood pressure, and high

16 cholesterol.  (AR 13, 509-12.)

17      On October 7, 2005, J. Stanley Bunch, Ph.D., a licensed clinical psychologist, performed a

18 consultative psychological evaluation of Plaintiff.  (AR 697-702.)  Testing revealed that Plaintiff's

19 "general cognitive ability is in the Extremely Low range of intellectual functioning, as measured by

20 the Full Scale IQ (Full Scale IQ = 65).  Her overall thinking and reasoning abilities exceed those of

21 approximately 1% of adults her age."  (AR 699.)  "As a result, [Plaintiff] may experience great

22

23

---

24      [2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in
a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.
25 Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from
an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's
26 RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and
'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
27 *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28                                      2

1  difficulty in keeping up with her peers in a wide variety of situations that require age-appropriate

2  thinking and reasoning abilities."  (AR 699.)

3       Dr. Bunch ultimately opined that Plaintiff's "reported history and performance on cognitive

4  testing suggests that [Plaintiff] is of Borderline Intellectual Functioning."  (AR 701.)  "Although

5  [Plaintiff] is functioning at the Borderline range of intellectual functioning, she related she is able

6  to manage her own finances, so long as she is able to operate on a cash basis.  She indicated she also

7  managed the finances for her business which she ran without assistance."  (AR 701.)  "However,

8  while [Plaintiff] may be able to understand and carry out simple instructions, her cognitive

9  limitations will prohibit her from understanding and processing tasks that are expected to be

10  completed simultaneously[;] therefore it is unlikely she will be able to multitask."  (AR 701.)  "This

11  may in turn cause problems for [Plaintiff] in the workplace with both supervisors and co-workers."

12  (AR 701.)

13       On December 8, 2005, Dr. Mallare, a state agency psychiatrist, completed a psychiatric

14  review technique form pursuant to 20 C.F.R. § 416.920a(e).  (AR 673-86.)  Dr. Mallare assessed

15  Plaintiff's functional limitations due to borderline intellectual functioning and opined that Plaintiff's

16  activities of daily living were mildly restricted.  She had mild difficulties in maintaining social

17  functioning, but had moderate difficulties in maintaining concentration, persistence, or pace.  (AR

18  683.)

19       On that same date, Dr. Mallare also assessed Plaintiff's mental RFC.  (AR 668-71.)  Dr.

20  Mallare opined that Plaintiff's ability to understand and remember detailed instructions was

21  moderately limited, but her understanding and memory were not otherwise significantly limited.

22  (AR 668.) Plaintiff was moderately limited in her ability: (1) to carry out detailed instructions; (2) to

23  maintain attention and concentration for extended periods; and (3) "to complete a normal workday

24  and workweek without interruptions from psychologically based symptoms and to perform at a

25  consistent pace without an unreasonable number and length of rest periods."  (AR 668-69.)

26  Plaintiff's capacity to sustain concentration and maintain persistence was not otherwise significantly

27

28                                   3

1   limited.  (AR 668-69.)  Plaintiff's social interaction and adaptation were also not significantly

2   limited.  (AR 669.)  In assessing Plaintiff's mental RFC, Dr. Mallare opined that Plaintiff had

3   adequate memory, understanding, and concentration to perform simple, repetitive tasks.  (AR 670.)

4        The Commissioner denied Plaintiff's application initially and again on reconsideration;

5   consequently, Plaintiff requested a hearing before an ALJ.  (AR 488-506.)  On January 18, 2008,

6   ALJ Stephen Webster held a hearing where a vocational expert ("VE") testified that a hypothetical

7   person of Plaintiff's age, education, and work history could perform light, unskilled jobs such as a

8   bagger or a garment sorter if such a person could (1) lift 20 pounds occasionally and 10 pounds

9   frequently; (2) sit/stand and/or walk for six hours in an eight-hour workday; (3) occasionally balance,

10  stoop, kneel, crouch, crawl, or climb; and (4) only do simple, routine, repetitive work.  (AR 130-31.)

11       The VE further testified that such a hypothetical person could perform sedentary, unskilled

12  jobs such as a sealer, loader, or stuffer if such a person could (1) lift 15 pounds occasionally and five

13  pounds frequently; (2) stand and/or walk for two hours and sit for eight hours in an eight-hour

14  workday; (3) occasionally bend, stoop, or crouch; and (4) only do simple, routine, repetitive work.

15  (AR 131-32.)  There would be no available jobs, however, if such a person would have to sit or stand

16  at will or elevate his feet at least one hour per day.  (AR 133.)

17       On March 28, 2008, ALJ Webster issued a decision, finding Plaintiff not disabled.  (AR 10-

18  22.)  Specifically, ALJ Webster found that Plaintiff (1) had not engaged in substantial gainful activity

19  since the alleged onset date of disability; (2) has an impairment or a combination of impairments that

20  is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not

21  have an impairment or combination of impairments that meets or equals one of the impairments set

22  forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has no past relevant work; and (5) could

23  perform other jobs in significant numbers in the national economy.  (AR 21-22.)

24       ALJ Webster determined that Plaintiff has the RFC to perform a significant range of light

25  work, lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and standing,

26  walking, and/or sitting up to six hours in an eight-hour workday.  ALJ Webster further found that

27

28                                        4

Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl. Plaintiff was also limited to simple, routine, repetitive tasks. (AR 16, 21.)

Plaintiff sought review of this decision before the Appeals Council. On March 25, 2009, the Appeals Council denied review. (AR 5-7.) Therefore, ALJ Webster's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On May 22, 2009, Plaintiff filed a complaint before this Court seeking review of ALJ Webster's decision. Plaintiff argues that ALJ Webster erred in evaluating the opinion of Dr. Mallare, the state agency psychiatrist, when the ALJ assessed Plaintiff's RFC. She further argues that ALJ Webster erred in applying res judicata when finding that Plaintiff had not proven sufficient changed circumstances to defeat the presumption of continuing non-disability from ALJ Flierl's decision.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

1

**APPLICABLE LAW**

2       An individual is considered disabled for purposes of disability benefits if he or she is unable

3  to engage in any substantial, gainful activity by reason of any medically determinable physical or

4  mental impairment that can be expected to result in death or that has lasted, or can be expected to

5  last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

6  1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or

7  impairments must result from anatomical, physiological, or psychological abnormalities that are

8  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

9  such severity that the claimant is not only unable to do her previous work, but cannot, considering

10  her age, education, and work experience, engage in any other kind of substantial, gainful work that

11  exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

12       The regulations provide that the ALJ must undertake a specific five-step sequential analysis

13  in the process of evaluating a disability.   In the First Step, the ALJ must determine whether the

14  claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).

15  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

16  or a combination of impairments significantly limiting her from performing basic work activities.

17  *Id.* §§ 404.1520(c), 416.920(c).   If so, in the Third Step, the ALJ must determine whether the

18  claimant has a severe impairment or combination of impairments that meets or equals the

19  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.   *Id.*

20  §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the ALJ must determine whether the claimant

21  has sufficient residual functional capacity despite the impairment or various limitations to perform

22  her past work.   *Id.* §§ 404.1520(f), 416.920(f).   If not, in Step Five, the burden shifts to the

23  Commissioner to show that the claimant can perform other work that exists in significant numbers

24  in the national economy.   *Id.* §§ 404.1520(g), 416.920(g).   If a claimant is found to be disabled or

25  not disabled at any step in the sequence, there is no need to consider subsequent steps.   *Tackett v.*

26  *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

27

28                                                                    6

# DISCUSSION

**A.**     **ALJ Webster Properly Considered Dr. Mallare's Opinion**

Plaintiff contends that ALJ Webster failed to properly evaluate the opinion of the state agency psychiatrist Dr. Mallare.  Defendant maintains, on the other hand, that Dr. Mallare's opinion did not preclude the performance of simple, repetitive work that the ALJ found that Plaintiff was capable of performing.   Further, Dr. Mallare's opinion was consistent with the consultative examiner's diagnosis of borderline intellectual functioning, which ALJ Webster addressed in his decision.

As noted above, Dr. Mallare opined that Plaintiff was moderately limited in her ability (1) to understand, remember, and carry out detailed instructions; (2) to maintain attention and concentration for extended periods; and (3) "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (AR 668-69.)  Plaintiff points out that ALJ Webster referred to Dr. Mallare's opinion that Plaintiff was "'moderately' limited in carrying out more detailed or complex job tasks or maintaining concentration for extended period of time." (AR 17.) Plaintiff argues, however, that ALJ Webster erred in failing to refer to the doctor's opinion that Plaintiff was moderately limited in her ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

Plaintiff's argument is unavailing.  In his assessment of Plaintiff's RFC and in his hypothetical questions to the VE, ALJ Webster included Dr. Mallare's opinion that Plaintiff had adequate memory, understanding, and concentration to perform simple, repetitive tasks.  (AR 16, 21, 130, 670.)  "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that a hypothetical question concerning a medical expert's opinion of a claimant's limitation to simple,

routine, or repetitive tasks sufficiently captures even a moderate limitation of concentration, persistence, or pace noted by the expert); *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence, or pace and pronounced claimant as possessing the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration, persistence, or pace). Therefore, even assuming *arguendo* that ALJ Webster may have erred in failing to note in his decision Plaintiff's moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, any error was inconsequential to the ALJ's ultimate non-disability determination, and was, therefore, harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**B.     ALJ Webster's Application of Administrative Res Judicata Was Harmless**

Plaintiff further asserts that ALJ Webster erroneously applied *Chavez v. Bowen* in finding that the presumption of continuing non-disability applied to the period following her prior application. Defendant maintains that ALJ Webster properly found that ALJ Flierl's decision in 2005 gave rise to a presumption of continuing non-disability and that Plaintiff failed to meet her burden to rebut the presumption absent evidence of changed circumstances.

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing non-disability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of non-disability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691, 693

1    (9th Cir. 1988); Acquiescence Ruling ("Ruling") 97-4(9).[3]  For example, a change in age status after

2    the first determination is a changed circumstance sufficient to rebut the presumption of continuing

3    nondisability.  *Chavez*, 844 F.2d at 693.  Changed circumstances also include an increase in the

4    severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the

5    criteria for determining disability.  Ruling 97-4(9); *see also Vasquez v. Astrue*, 572 F.3d 586, 597-98

6    (9th Cir. 2009).

7         However, even where the claimant is able to overcome the presumption of disability, certain

8    prior findings are entitled to some res judicata consideration.  Prior determinations of RFC,

9    education, and work experience are entitled to res judicata absent new and material evidence on the

10   issue.  *Chavez*, 844 F.2d at 694.  "Adjudicators must adopt such a finding from the final decision on

11   the prior claim in determining whether the claimant is disabled with respect to the unadjudicated

12   period unless there is new and material evidence relating to such a finding or there has been a change

13   in the law, regulations or rulings affecting the finding or the method for arriving at the finding."

14   Ruling 97-4(9).

15        Here, ALJ Webster noted that Plaintiff had filed a prior application, which ALJ Flierl had

16   denied in a decision dated January 18, 2005.  (AR 13.)  ALJ Webster further noted that, "for a

17   claimant to overcome the presumption of continuing non-disability arising from an unfavorable

18   decision, there would have to be significant 'changed circumstances' indicating a greater degree of

19   disability than had been found before."  (AR 18.)  ALJ Webster concluded that, despite Dr. Bunce's

20   diagnosis of borderline intellectual functioning in October 2005, Plaintiff had "not proven sufficient

21   changed circumstances to defeat the presumption of continuing non-disability arising from the prior

22   January 18, 2005 hearing decision.  Thus, [Plaintiff] remains 'not disabled.'"  (AR 18.)

23

24   _____

25        [3] Ruling 97-4(9) was adopted in response to *Chavez* and explains how the holding in *Chavez* is to be applied,
     noting that it is applicable only to Ninth Circuit cases.  *See* Ruling 97-4(9), 1997 WL 740404.  Acquiescence Rulings
26   "are binding on all components of the Social Security Administration" and accorded deference by a reviewing court.
     20 C.F.R. § 402.35(b)(2); *see McNabb v. Barnhart*, 340 F.3d 943, 944-45 (9th Cir. 2003).

27

28                                                    9

1    Plaintiff correctly points out that changed circumstances existed to prevent ALJ Webster

2  from applying the presumption of continuing non-disability because Plaintiff alleged an additional

3  impairment of borderline intellectual functioning.  *See Vasquez*, 572 F.3d at 597.  As discussed

4  above, the ALJ must first examine whether changed circumstances exist to prevent a finding of

5  continuing non-disability.  If changed circumstances exist, as they do here, the prior RFC is still

6  entitled to res judicata.  The ALJ must then determine whether new and material evidence exists to

7  warrant a change in the prior RFC.

8    In this case, ALJ Webster erred in finding an absence of changed circumstances to disprove

9  the presumption of continuing non-disability from the prior unfavorable hearing decision.  However,

10  the ALJ thoroughly reviewed the medical evidence in finding new severe impairments (including

11  borderline intellectual functioning) and imposing the additional limitations to Plaintiff's RFC of

12  performing only simple, routine, and repetitive tasks, and only occasional climbing, balancing,

13  stooping, kneeling, crouching, or crawling.  (AR 21.)  In other words, ALJ Webster did not strictly

14  apply the presumption of continuing non-disability because he continued further with his review and

15  completed the five-step sequential process.  (AR 18-21.)  Even if the ALJ had correctly found that

16  Plaintiff's changed circumstances rebutted the presumption of continuing non-disability, the ALJ

17  would have had to proceed with a review of the medical evidence, as he did despite his error.  Thus,

18  ALJ Webster's finding that the presumption of continuing non-disability applied in this case is

19  harmless error because it did not negate the validity of the ALJ's ultimate conclusion.  *See Batson*

20  *v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where

21  it did not negate validity of ALJ's ultimate conclusion).  In sum, ALJ Webster's findings are

22  supported by substantial evidence and are legally correct.

23                                    **CONCLUSION**

24    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

25  evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

26  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

27

28                                        10

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Della Diaz.


IT IS SO ORDERED.

**Dated:** ___**August 30, 2010**___                          _____/s/ Sheila K. Oberto_____
                                                                                         UNITED STATES MAGISTRATE JUDGE